## John O. Murray, Plff. in Err., *v.* A. R. McCarthy et al.

An absolute conveyance in fee will not be converted into a mortgage by a defeasance executed immediately afterward but not part of the contract for the conveyance.

Parol evidence is admissible to rebut the presumption that a defeasance bearing the same date as an absolute deed in fee simple was not part of the contract for the conveyance, but an afterthought.

(Decided October 4, 1886.)

Error to the Common Pleas of Huntingdon County to review a judgment on a verdict for the defendants in an action of ejectment. Affirmed.

Cited in Gattle Bros. v. Kremp, 6 Pa. Super. Ct. 514, 521, 41 W. N. C. 569.

NOTE.—By the act of June 8, 1881 (P. L. 84), a deed absolute on its face cannot be changed by a defeasance into a mortgage, unless by writing executed contemporaneously with the deed. Grove v. Kase, 195 Pa. 325, 45 Atl. 1054. This legislation applies only to deeds. Brown v. Beecher, 120 Pa. 590, 15 Atl. 608; Huston v. Regn, 184 Pa. 419, 39 Atl. 208. Its provisions can be invoked only by parties in interest. Burkhart v. Farmers' Union Asso. 11 Pa. Super. Ct. 280.

At the trial before Hoy, P. J., it was admitted that both plaintiff and defendants claimed under William Young, who owned the property prior to February 2, 1880. The plaintiff claimed title to the property by purchase on April 14, 1882, at sheriff's sale in execution of a judgment entered against Young on February 17, 1882. The defendants claimed by deed of February 2, 1880, absolute on its face and duly recorded, from Young to the defendant McCarthy, the consideration for which was the satisfaction of judgments amounting, with costs, to over $700, which McCarthy held against Young. After the plaintiff and defendants had put in evidence their respective titles, the plaintiff proved in rebuttal the following instrument dated February 2, 1880, and signed and sealed by the defendant McCarthy, but not recorded:

"To whom it may concern:

"Whereas, William Young of Shirley township, Huntingdon county, Pennsylvania, has this day deeded his farm in said township (70 acres more or less) to me in consideration of about $700 of claims that I hold against him and it, I hereby agree that if, in three years, he has paid me back all claims, interest, and expenses thereon, I will deed back the property to him; or if by that time he has paid within $100 of the claims, interest, and expenses I may have incurred, I will give him another year to pay the balance, and this chance to be open for the time specified both to him and his children."

It was also in evidence that after the execution and delivery of the deed and before the defeasance was mentioned, the defendant McCarthy leased the property to Young and his son for two years from April 1, 1881.

The defendant McCarthy was then offered by his counsel as a witness, to prove that he was the owner of judgments against Young to the amount of nearly $700, which were the first liens against Young's real estate, and which was the full value of the estate; that after or about the time of the expiration of the liens of these judgments, he threatened to issue an execution against Young and sell the property to collect his claim; that Young proposed to convey to him the land by absolute deed to save the expense and cost connected with the sheriff's sale; that in pursuance of that agreement, on February 2, 1880, Young did make an absolute conveyance of the land in dispute to McCarthy by general warranty deed, and delivered to McCarthy possession of

the property and all the title papers to it, at the same time becoming a tenant under a written lease, of McCarthy; for the purpose of showing that this conveyance by Young to McCarthy was an absolute sale of the property in payment of an existing debt; and for the further purpose of showing that the paper which they rely upon as the defeasance of this absolute conveyance was an after consideration and was not a part of the transaction in the conveyance of the real estate, but a mere agreement to sell that was never complied with, and that it was not a part of the consideration.

Plaintiff's counsel objected to the offer as irrelevant. Objection overruled.

McCarthy then testified, *inter alia,* as follows:

Q. Which was executed first, the deed or the agreement?

A. The deed was executed first, and then this lease.

Q. What, if anything, did William Young say to you at the time of the execution of this deed and article of agreement? What, if anything, did William Young say to you about the payment of these judgments?

A. He wanted to know whether these judgments were paid now or would still stand against him. I told him that this deed cleared the judgments and that he was out of debt to me now.

Q. You told him that?

A. Yes, sir.

Q. What did he say then, if anything?

A. Well, he said he thought it was hard for an old man to have to leave his place after living as long as he had on it; and he wanted to know if I would give him a chance to buy it back.

Q. Now, up to this time, to the execution of these papers, the execution of this deed and this lease, had one word been said to you by Young, or by you to Young, about entering into an agreement to convey back the property to him?

A. No, sir.

Q. At what period was it this paper was first referred to, and under what circumstances did you give this paper?

A. After the deed and lease were signed, and we had the talk about the judgments, he then wanted to know if I would give him a chance to buy the property back and how long I would give him to redeem the place or buy it back. I told him I had made a lease of it for two years to him, and I would give him

that time in which to buy it back, and that I would enter into an agreement with him to buy it back—if he would make the payments; but I wanted to know about the payments being secure before I would make an agreement. He said he expected his son John to furnish him the money to buy it back, and he would like to have a paper or something to show his son John that he had such an agreement, and asked me if I could get up such a paper to show his son John. I told him I thought my word to John was good enough, but he said he wanted a paper to show his son John, and he insisted on it, so I drew up the paper.

This testimony was fully corroborated by that of the notary public who took the acknowledgment of the deed.

The court after reviewing the evidence charged the jury as follows:

"We say to you that if this deed and that defeasance were parts of one and the same transaction, and if they were agreed upon at one and the same time, and executed and delivered at one and the same time, then the two papers constitute a mortgage; and the defeasance not being recorded, it would be in effect the same as an unrecorded mortgage, and a judgment entered subsequently against William Young would be a good lien upon the land; and execution afterwards issued, a levy had, and a sale by the sheriff, the sheriff's deed would convey a good title to the purchaser at such sheriff's sale.

"But, on the other hand, if they were not part of one and the same transaction; [if it is as is alleged and claimed by the defendant, that the contract to purchase that farm, or the contract for the sale of that farm, was made and that the consideration was paid and that a deed was duly executed and acknowledged and delivered, also another paper, given in evidence here, a lease which the defendant alleges was executed at the same time, and that that completed the transaction; if that is a fact as is alleged, that the transaction was completed at the time this deed and lease were delivered, and that subsequently other arrangements were made, resulting in the making of this paper given in evidence and called a defeasance,—then it would not in law be a mortgage, and this defense set up here by Dr. McCarthy would be a good legal defense, and he would be entitled to your ver-

dict;] this deed, although absolute on its face, may be shown by parol evidence to be a mortgage, but that which makes it a mortgage must be part of the same consideration and must be done at the same time. [The plaintiff speaks of it being done contemporaneously, but not simultaneously. 'Simultaneous' means at the same time; and a thing done contemporaneously with another may be done at or about the same time on the same day, but not precisely at the same time; while 'simultaneously' means at one and the same time.] Although it may appear it was done on the same day, unless it was part of the same transaction which resulted in the making of this deed offered in evidence by the defendant, it would not in law be a mortgage.

"[Dr. McCarthy testified he held certain claims against William Young, the greater portion of which were in the nature of judgments, and he said he had other claims which were not in judgment; that he had claims amounting to over $700. You will recollect the evidence about this, how they got at that primarily, what the negotiations for that agreement were, which resulted in the agreement that this land was to be conveyed by William Young to Dr. McCarthy in consideration for these claims amounting to $700, the consideration named in the deed. He further testified that when that was done the agreement was that Young should remain in possession, he and one of his boys were to remain there; the price at that time was agreed upon, the deed was made and executed and delivered, and at the same time this lease was made and executed. Mr. Harrison, a notary public, the gentleman who took the acknowledgment of the deed and who witnessed its execution, corroborates Dr. McCarthy on that question. He testifies that after he took the acknowledgment and witnessed these papers, the transaction was completed; he got up and was going away and just as he got near the door he heard Mr. Young say, that it was pretty hard after having lived there a number of years, that he should be turned off of his farm now, or words to that effect, and that then a new proposition was made by Dr. McCarthy. Dr. McCarthy then said what he would do. Now, if these facts I have related by this witness show that this was a separate and distinct contract, and that the first transaction was completed, and if his testimony is believed, then the first transaction would be a complete and separate transaction, because the deed had already been executed, acknowledged, and delivered before the other was mentioned; and when that trans-

action was completed, it was an absolute sale. If Dr. McCarthy is to be believed, there was nothing said about a reconveyance until after an acknowledgment and delivery of the deed. If that be true—that nothing was said until after the execution and delivery of the deed, after that transaction was done and completed it was an absolute conveyance, and Dr. McCarthy would have a good title.] But if it was not so done and this defeasance was a part of the transaction, part of the same thing, indeed part of the sale, although it was not written for a few minutes afterwards, ten or fifteen minutes afterwards, still if it was part of the transaction it would, in law, be a mortgage, and the plaintiff would be entitled to recover; or in other words, if Dr. McCarthy agreed that as a part of the consideration—as a part of a contract—he would enter into an agreement; that he would reconvey this property to him upon conditions as therein stated—stated in the defeasance—then it is a part and parcel of the same transaction, and that deed and paper constitute a mortgage; and, the paper not being on record, therefore not being notice to the public, it is in effect the same as an unrecorded mortgage; and the property having been subsequently sold at sheriff's sale and bought by Mr. Murray, the sheriff's deed would convey a good title and the plaintiff would be entitled to recover."

The court refused the plaintiff's points—which were in effect a request for binding instructions. Verdict for the defendants and judgment thereon. Thereupon the plaintiff took this writ. The assignments of error specified the admission of the evidence above mentioned, the portions of the charge included in brackets, and the refusal of the plaintiff's points.

*Petrikin & McNeil,* for plaintiff in error.—As the deed and defeasance bore even date and the defeasance recited that "Wm. Young has this day deeded his farm to me," no evidence should have been received to vary the legal effect of the two papers as constituting an unrecorded mortgage. Colwell v. Woods, 3 Watts, 188, 27 Am. Dec. 345; Kerr v. Gilmore, 6 Watts, 405; Brown v. Nickle, 6 Pa. 390.

In Friedley v. Hamilton, 17 Serg. & R. 70, 17 Am. Dec. 638, an absolute deed and defeasance made on the same day, the defeasance not recorded, was ruled to constitute an unrecorded mortgage and postponed to a judgment creditor of subsequent date, and so the jury were instructed.

In Jaques v. Weeks, 7 Watts, 261, 267, 268, the deed and defeasance were made on the same day, defeasance not recorded; the court charged the jury that the two papers constituted an unrecorded mortgage.

In Reitenbaugh v. Ludwick, 31 Pa. 131, this court held that parol evidence is admissible to show that a formal conveyance with a defeasance executed more than a month afterwards constituted in fact a mortgage, and not a conditional sale; but the court held as a conclusion of law that if the deed and defeasance had been executed at the same time that they would constitute a mortgage.

In Wilson v. Shoenberger, 31 Pa. 295, there were a deed, mortgage, and defeasance, all of even date; and the defendants, in order to show that the deed to Wilson was an absolute sale and not a mortgage, gave in evidence, as in this case, as acts of ownership, a lease. The court held that the deed and accompanying papers could only operate as a mortgage, and directed a verdict for the plaintiff.

In the case of Umbenhower v. Miller, 101 Pa. 71, Chief Justice MERCUR, delivering the opinion of the court, says: "It is true the written defeasance offered bears date a few days after the date of the conveyance. If they bore even date, they constitute in law a mortgage; but where the defeasance is of later date it is a question of fact for the jury to determine."

*George B. Orlady,* for defendants in error.—The evidence of the defendant McCarthy was properly admitted, to enable the jury to determine what was said by the parties to the contracts at the moment of their creation, whether the conveyance and agreement were independent of each other or the result of one contract. 1 Wharton, Ev. § 3; 1 Best, Ev. 10; 1 Greenl. Ev. 3.

In Plume v. Guthrie, 76 Pa. 441, the court says: "Such testimony . . . when received, if it fails to satisfy the court as well as the jury—if it does not make out a case in which a chancellor would decree a conveyance, it should not be submitted to the jury."

In this case the offer made in good faith was supported by evidence which satisfied the jury, who founded their verdict on it. Paige v. Wheeler, 92 Pa. 282; Stewart's Appeal, 98 Pa. 377; Burger v. Dankel, 100 Pa. 113.

In Umbenhower v. Miller, 101 Pa. 71, the offer was substan-

tially as made by the plaintiff in this issue; the offer was rejected by the court below—which was assigned for error, and the judgment below was reversed for that reason.

And in Huoncker v. Merkey, 102 Pa. 462, the court says: "The burden of proof was upon the defendants at the trial to convert an absolute deed into a mortgage by parol proof; . . . it must establish an agreement substantially contemporaneous with the execution and delivery of the deed."

The gist of this case was, Was the execution of the agreement to sell, part and parcel of the transaction, or was it a new contract? On a fair submission to the jury, they have found the latter. What more could be asked by the holder of an equitable title, for speculative purposes?

In the cases cited by plaintiff the conveyance and defeasance were clearly determined by the court or found by the jury to be, "to secure the repayment of money;"—"parts and parcels of the same transaction," as in Friedley v. Hamilton, 17 Serg. & R. 70, 17 Am. Dec. 638; or constituent parts of the execution of the same agreement, executed both at the same time and regarded precisely in the same point of view and of the same effect, as if they had been joined together in the same writing, as in Colwell v. Woods, 3 Watts, 188, 27 Am. Dec. 345; or executed at the same time, in pursuance of one and the same agreement, and regarded as one instrument between the parties, made for the purpose of securing repayment of the money lent, as in Jaques v. Weeks, 7 Watts, 261; or "from first to last the parties treated as for security for money and not fixing terms of sale," and "treating for a security and not for sale or purchase," as in Reitenbaugh v. Ludwick, 31 Pa. 131; or "to amount to nothing more than a device or expedient to pledge the property as a security for money" and not a sale, as in Wilson v. Shoenberger, 31 Pa. 295.

The proof necessary to convert a deed into a mortgage must be clear, explicit, and unequivocal; Plumer v. Guthrie, 76 Pa. 441; Burger v. Dankel, 100 Pa. 113; Todd v. Campbell, 32 Pa. 250; and clear, precise, and indubitable; Logue's Appeal, 104 Pa. 136; Hartley's Appeal, 103 Pa. 23; Rowand v. Finney, 96 Pa. 196; Null v. Fries, 110 Pa. 521, 1 Cent. Rep. 610, 1 Atl. 551.

"Each case must, of course, to a great extent, depend upon the circumstances peculiar to itself; but there are certain indicia of

intention which frequently occur, and which when they do exist are always looked to; among these are the sufficiency or insufficiency of the price paid; whether or not existing securities or evidences of indebtedness were given up or canceled; whether there was any obligation to repay the purchase money; and whether the grantee entered into immediate possession of the premises." Huoncker v. Merkey, 102 Pa. 466; Colwell v. Woods, 3 Watts, 197, 27 Am. Dec. 345; Wilson v. Shoenberger, 31 Pa. 295.

PER CURIAM:

We see no error in the admission of evidence nor in refusing to affirm the points submitted by the plaintiff. The jury have found that the execution of the deed and the giving of the mortgage were not one transaction. The execution of the mortgage was an afterthought. It was after the deed had been delivered.

There is no error in the charge of the court.

Judgment affirmed.